No. 21-80038

# In the United States Court of Appeals for the Ninth Circuit

───────────────

CLAYTON SALTER, individually, and on behalf of all others similarly situated,
*Plaintiff-Petitioner*,

v.

QUALITY CARRIERS, INC., an Illinois Corporation, QUALITY DISTRIBUTION, INC., a Florida Corporation,
*Defendants-Respondents*.

───────────────

On Appeal from the United States District Court
for Central California, Los Angeles
Case No.20-cv-00479 (The Hon. John F. Walter)

## REPLY IN SUPPORT OF PETITION FOR PERMISSION TO APPEAL

JENNIFER D. BENNETT
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
jennifer@guptawessler.com

May 18, 2021

MATTHEW W.H. WESSLER
GUPTA WESSLER PLLC
1900 L Street NW, Suite 312
Washington, DC 20036
(202) 888-1741
matt@guptawessler.com

*Counsel for Plaintiff-Petitioner*

# TABLE OF CONTENTS

Table of contents ................................................................................... i

Table of authorities ............................................................................... ii

Introduction .......................................................................................... 1

Argument ............................................................................................... 2

    I.      Quality does not dispute that the district court committed clear legal error in concluding that common issues do not predominate. ................................................................................... 2

          A.      Quality concedes that common issues predominate on claims governed by the ABC test. ............................................ 2

          B.      Quality concedes that under the *Borello* test, only variations in the right to control, not the exercise of control, matter. ......... 4

    II.     Quality's defense of the district court's typicality ruling repeats the same legal errors the district court made. ..................................... 7

Conclusion ........................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Ayala v. Antelope Valley Newspapers, Inc.*,
    59 Cal. 4th 522 (2014)...................................................................... 6

*Brinker Restaurant Corp. v. Superior Court*,
    53 Cal. 4th 1004 (2012)...................................................................... 9

*California Trucking Association v. Bonta*,
    --- F.3d ----, 2021 WL 1656283 (9th Cir. April 28, 2021) ........................................2

*Gonzales v. San Gabriel Transit, Inc.*,
    40 Cal. App. 5th 1131 (2019) ............................................................... 3

*Narayan v. EGL, Inc.*,
    616 F.3d 895 (9th Cir. 2010) ...............................................................7

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010).............................................................. 8

*Ruiz Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016)............................................................... 10

*Ruiz v. Affinity Logistics Corp.*,
    754 F.3d 1093 (9th Cir. 2014)...............................................................7

*S.G. Borello & Sons, Inc. v. Department of Industrial Relations*,
    48 Cal. 3d 341 (1989)....................................................................5, 7

*Yokoyama v. Midland National Life Insurance Co.*,
    594 F.3d 1087 (9th Cir. 2010) ............................................................... 11

# INTRODUCTION

Quality cannot defend the district court's decision in this case. For the most part, it doesn't even try to do so. Instead, the company attempts to rewrite it, basing its opposition to review on an invented decision the district court did not actually render—and then attempts to defend that nonexistent decision by misrepresenting the law.

Ultimately, however, Quality's efforts to dodge the decision below and the governing law only highlight the fact that the district court committed clear legal error: Its predominance analysis was based on substantive law that both this Court and the California Supreme Court have expressly rejected, and its typicality analysis turned on speculative differences between Mr. Salter and the other class members that can't possibly make a difference in their claims (not to mention applying incorrect substantive law)—something this Court has repeatedly held is legal error.

The district court's decision will inevitably be reversed. There is no reason to require that Quality's drivers wait years for that to happen. The Rule 23(f) petition, therefore, should be granted.

# ARGUMENT

## I. Quality does not dispute that the district court committed clear legal error in concluding that common issues do not predominate.

### A. Quality concedes that common issues predominate on claims governed by the ABC test.

Quality does not even attempt to defend the district court's reliance on variations in the company's exercise of control to deny certification of claims governed by the ABC test. It can't—the ABC test doesn't turn on the exercise of control. *See* Pet. 14–16. So variations in the exercise of control are irrelevant. *See id.* And under the actual ABC test, there's no dispute that common questions predominate. Workers are employees under prong B of the ABC test if they perform work in the usual course of business of their employer. *See id.* Quality cannot dispute that this prong is easily satisfied through common evidence: Every class member is a truck driver, and Quality is a trucking company.

Before the district court, Quality argued that the ABC test is preempted. But, of course, preemption itself is a common question. It cannot, therefore, defeat class certification. And, in any event, this Court recently held that the ABC test is not preempted. *See Cal. Trucking Ass'n v. Bonta*, --- F.3d ----, 2021 WL 1656283, at *13 (9th Cir. Apr. 28, 2021).

The company's only remaining argument on this point is that not all of the claims in this lawsuit are governed by the ABC test. But that argument is contrary to

California law. As we explained in our petition (at 6), the California Court of Appeal has expressly held that *all* of the claims at issue here are governed by the ABC test, regardless of when they arose. *Gonzales v. San Gabriel Transit, Inc.*, 40 Cal. App. 5th 1131, 1157 (2019).[1] Quality's choice to ignore this precedent doesn't make it any less controlling.

And even if Quality were correct that the only claims that are subject to the ABC test throughout the class period are the meal and rest break and minimum wage claims, the district court's decision not to certify at least those claims is manifestly erroneous. Quality conceded as much below and does not seriously argue otherwise here.[2] That alone is sufficient reason to grant the petition: Even putting the district court's other errors aside, at the very least, its decision on these claims will inevitably be overturned.

---

[1] That's because, contrary to Quality's assertion, the ABC test governs both claims under California's wage orders *and* the equivalent claims under the California Labor Code. *Gonzales*, 40 Cal. App. 5th at 1157.

[2] Quality argues that the meal and rest break claims are preempted, but it does not dispute that whether a claim is preempted is itself a classwide question that cannot defeat certification. The company also asserts that Mr. Salter did not seek certification of his minimum wage claims, but—as he clarified before the district court—Mr. Salter sought certification of all claims. *See* Reply Supp. Mot. Class Cert. 1 n.1 (Dkt. 60).

## B. Quality concedes that under the *Borello* test, only variations in the right to control, not the exercise of control, matter.

As with the ABC test, Quality does not even attempt to defend the district court's opinion under the *Borello* test because it cannot possibly do so. The district court relied on variations in the company's exercise of control, even though both this Court and the California Supreme Court have repeatedly held that whether or how a company exercises control is irrelevant—all that matters is whether they have a *right* to do so. *See* Pet. 11–14.

Unable to defend the district court's decision, Quality misrepresents what it says. The company asserts (at 14) that the district court denied class certification because it concluded that Quality's agreements and training materials evidenced variation in its "right to control" its workers, and therefore the "court considered how Quality's policies operated in practice." But that's just not true. The district court explicitly looked to the agreements and training materials—as well as Quality's actual practice—to determine whether there were variations in the company's *exercise* of control, not variations in the company's right to control, as Quality contends. *See, e.g.*, Order 10 ("Under either the *Borello* test or the ABC test, Plaintiff will have to establish that Quality *exercised* the necessary degree of control over the drivers' working conditions." (emphasis added)); *id.* (examining agreements and training

materials to determine "degree of control that Quality *exercised*" (emphasis added)). That is plain legal error. Quality doesn't argue otherwise.[3]

Quality attempts to blame Mr. Salter for the district court's error. But Mr. Salter never argued that the relevant question was whether there were variations in Quality's exercise of control—let alone asked the district court to rule on that question. To the contrary, he consistently and repeatedly made clear that the relevant question was whether the company's *right* to control its workers could be evaluated through common evidence.[4]

---

[3] Quality makes a halfhearted attempt to demonstrate variations in its right to control its workers, but this attempt fails. The only differences in Quality's agreements with its workers are differences in the termination provisions. But Quality does not dispute that all three of its agreements permitted it to terminate a worker for not complying with the company's orders—that is, all three ensured the company's right to control its workers through termination, regardless of the exact words they used to do it. *See* Pet. 12 n.5. The only other variation Quality highlights are minor variations between the two training powerpoints the company gave during the class period. But the company does not identify any difference that would demonstrate variation in the company's *right* to control its workers, as opposed to variations in how it exercised that control. And, in any event, to the extent such minor variations in either the agreements or the training powerpoints could possibly matter, they are easily handled through subclasses.

[4] *See, e.g.*, Class Cert. Reply 5 (explaining that Quality's opposition to class certification "ignor[ed] the actual question that matters—did it have the *right* to control its workers?—and focus[ed] instead on an irrelevant one—did it exercise that right in the same way over each driver" and making "clear" that it is only "the former question that carries legal significance under *Borello*" (emphasis added)); Class Cert. Mem. 21 (Dkt. 54-1) ("Under *Borello*, 'the principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired.'" (quoting *S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*, 48 Cal. 3d 341, 342 (Cal. Supreme Ct. 1989)).

5

Falling back, Quality argues that this Court should ignore the district court's clear legal error because, in its view, individual issues predominate under the secondary factors of the *Borello* test (though the district court did not address the issue). Yet again, this argument ignores the fact that certification is warranted under the ABC test. It's also just wrong.

Quality cites a single secondary factor it contends should defeat predominance under the *Borello* test—the provision of equipment. But Quality itself states (at 16) that this factor can be determined with common evidence: Quality argues that the agreements establish that drivers have the right to provide their own equipment, and the fact that some drivers actually did so confirms this. In other words, Quality argues that the same evidence will show that every class member loses on this factor. But that is an argument *in favor of* certification. On Quality's own argument, the class might lose this factor on the merits, but win or lose, the factor can be decided in a single stroke.[5]

Despite Quality's efforts to muddy the waters, the district court's decision is clear. The court denied certification because of variations in Quality's exercise of

---

[5] Even so, Quality's focus on a single secondary factor is misplaced anyway. The California Supreme Court has cautioned courts against giving too much weight to any individual secondary factor—and it has specifically called out the provision-of-equipment factor as one that is less relevant to employment status. *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 540 (2014). Merely "recit[ing] secondary factor variations" without demonstrating "materiality," therefore, cannot defeat certification. *Id.*

control. Because that is a fundamental legal error that will inevitably be reversed on appeal, it warrants immediate review now.

## II. Quality's defense of the district court's typicality ruling repeats the same legal errors the district court made.

Quality's attempt to salvage the district court's ruling on typicality fares no better. Quality defends the district court's conclusion that Mr. Salter's claims are atypical of the class simply because most of his work was performed for a particular Quality customer by making the same mistakes of law the district court made.

**1.** First, Quality argues, some of the requirements imposed on Mr. Salter were imposed at that customer's behest. But, as our petition explains, that's irrelevant. Pet. 18-19. (Presumably, that's why Quality didn't actually make this argument below in the first place.)

Both this Court and the California Supreme Court have made clear that the fact that an employer imposes requirements at the behest of a customer is not a defense to misclassification under California law. *See, e.g.*, *Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1102 n.5 (9th Cir. 2014); *Borello*, 48 Cal. 3d at 358 n.13. To the contrary, an employer's power to require a worker to comply with a customer's requirements itself demonstrates a right of control that indicates the worker is an employee under the *Borello* test. *See, e.g.*, *Narayan v. EGL, Inc.*, 616 F.3d 895, 902 (9th Cir. 2010) (citing requirements imposed due to "customer requests" and customer "requirements" as evidence of employer's right to control). Although we discussed this case law in our

7

petition, Quality chooses to ignore it, instead proffering an argument it knows is legally foreclosed.

Quality doesn't argue that its *right* to impose requirements on its drivers at the behest of its customers is unique to Mr. Salter; indeed, the company does not dispute that it has the *same right* to impose requirements on all of its drivers. It argues only that the way in which it *exercised* that right varied based on the customers each driver served. But, again, the exercise of control is irrelevant. Under the *Borello* test, it is the right to control that matters. And under prong B of the ABC test, control is irrelevant entirely.

Differences between the named plaintiff and the class members can only defeat typicality if they are material. *See* Pet. 17 (citing *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141–42 (9th Cir. 2016); *see Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)). Any difference in how Quality exercised its control over Mr. Salter because of the particular customer he happened to serve therefore cannot defeat typicality. The district court's conclusion to the contrary contravenes longstanding Ninth Circuit and California Supreme Court precedent.

**2.** In a last-ditch effort to avoid review, Quality attempts to manufacture substantive differences between Mr. Salter's claims and those of other class members. But, here too, Quality's arguments rely on misrepresenting the law.

As to the meal and rest break claims, Quality concedes (at 19) that it had a uniform meal and rest break policy—one 30-minute break every eight hours—that applied to all drivers, including Mr. Salter. The company does not dispute that this policy violates California law, which requires more frequent breaks. But it argues that a common illegal policy is insufficient. According to Quality (at 19), California law requires that each class member will *also* have to show they were "impede[d] or discourage[d]" from taking the breaks the law requires. But the very case Quality cites in support of that argument, *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004 (2012), says precisely the opposite: If an employer "adopts a uniform policy authorizing and permitting only one rest break for employees working a [particular] shift when [more] are required—it has violated the wage order and is liable." *Brinker*, 53 Cal. 4th at 1033. No additional showing needed. *See id.*[6]

By Quality's own admission, Mr. Salter was subject to the same unlawful meal and rest break policy as every other driver. That policy is all that is required to demonstrate liability. There is, therefore, no difference in his meal and rest break claims that could defeat typicality.

---

[6] Of course, where a company adopts a policy that *complies* with California's meal and rest break laws, a worker can show that it is nevertheless in violation of those laws if, despite the policy, the company impedes or discourages workers from taking their breaks. *See Brinker*, 53 Cal. 4th at 1040. But such a showing is unnecessary where the company's policy, on its face, does not authorize legally compliant breaks in the first place. *Id.* at 1033.

9

Quality's argument on the business deduction claim is equally unavailing. Like every other typicality argument Quality makes here, the company did not make this argument below. And it is difficult to follow. Quality speculates that Mr. Salter's business-expenses reimbursement claim might somehow be unique because some of the costs of doing his job *might* have arisen because of the particular Quality customer he serviced. But, of course, speculation cannot defeat typicality. *See, e.g.*, *Ruiz Torres*, 835 F.3d at 1141–42. And although Quality has records of every business expense it deducted from its drivers' paychecks, it doesn't identify a single expense unique to Mr. Salter.

And, in any event, Quality offers no explanation for how any such expense could possibly matter. Typicality is not defeated simply because there may be differences between the named plaintiff and class members. Those differences must "make a substantive difference in the prosecution of the" claims, such that they would "preoccupy" the named plaintiff or "threaten to become the focus of the litigation." *Id.* Expenses necessary to serve Quality's customers are, by definition, business expenses. There's no reason, therefore, they'd be treated any differently than any other business expense; or even that they'd need to be separately identified. Quality does not dispute that it had a universal policy—applicable to Mr. Salter no different than any other driver—of deducting business expenses from its drivers' paychecks. Nor does it dispute that if its drivers are, in fact, employees, that policy

violates California law. Mr. Salter's claim that Quality's deduction of its business expenses from his paycheck violated California law, therefore, is typical of every other class member's claim, which alleges precisely the same thing.

Quality's assertion (at 20) that it might not have "had reason to be aware" of all of the expenses it deducted from Mr. Salter's paycheck is even more perplexing. The deductions Mr. Salter—and the other class members—seek are deductions Quality itself took from their paychecks. Of course, Quality "had reason to be aware" of these deductions; it was doing the deducting. This Court should not permit Quality to delay review of a clearly erroneous district court decision that will inevitably be overturned, based on an outlandish contention that it might not have known about its own payroll.[7]

*****

Quality's need to resort to absurd arguments to try to defend the district court's decision only underscores how deeply flawed that decision is. Because it will

---

[7] Quality's conclusory assertion that these same arguments undermine predominance fails for the same reason: These arguments are wrong. The only individualized issue with respect to the meal and rest break claims or the business expense claims is the amount of damages each class member is owed. But that can easily be calculated from Quality's records. *See* Class Cert. Mot. 26. This Court has repeatedly held that such ministerial damages calculations do not undermine predominance. *See, e.g.*, *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010).

inevitably be overturned, this Court should grant the petition for permission to appeal now.

## CONCLUSION

The petition for permission to appeal should be granted.

Respectfully submitted,

May 18, 2021

*/s/ Jennifer D. Bennett*
JENNIFER D. BENNETT
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
*jennifer@guptawessler.com*

MATTHEW W.H. WESSLER
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741
*matt@guptawessler.com*

# CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 5 because this petition is 2,846 words. This petition complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

*/s/Jennifer D. Bennett*
JENNIFER D. BENNETT